NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DWAYNE PAGE, on behalf of himself and all others similarly situated,<br><br>        *Plaintiff*,<br><br>    v.<br><br>N.A.R. INC.,<br><br>        *Defendant*. | Civil No.: 18-cv-2200 (KSH) (CLW)<br><br>**OPINION** |

**Katharine S. Hayden, U.S.D.J.**

## I. Introduction

In this putative class action, plaintiff Dwayne Page ("Page") asserts that defendant N.A.R. Inc. ("NAR"), a debt collector, violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, by sending him a collection letter with an amount due and stating that because of "interest or other charges that may vary from day to day," the amount due could be higher on the date of payment. Page asserts that the statement was false because no interest or other charges were or could be added to his debt. NAR has moved to stay the action and to compel arbitration on an individual basis (D.E. 5), relying on an arbitration provision in the agreement between Page and the original creditor. Page argues that NAR cannot invoke that provision. The motion is fully briefed, and the Court decides it without oral argument. *See* L. Civ. R. 78.1.

## II. Background

Page's complaint alleges as follows. At some point before June 1, 2016, Page incurred a debt to Crest Financial Services, LLC ("Crest") for a furniture lease. (D.E. 1, Compl. ¶ 14.) Page fell behind on repaying the debt, which was past due and in default when it was placed with

NAR for collection. (*Id.* ¶¶ 19, 21.) On or about February 16, 2017, NAR mailed Page a letter that listed Crest as the creditor. (*Id.* ¶¶ 23-24, 33 & Ex. A.) It stated:

> As of the date of this letter, this is the amount due. Because of interest or other charges that may vary from day to day, the amount due on the day you pay may be greater.

(*Id.* ¶ 34 & Ex. A.) But neither Crest nor NAR ever added interest or other charges onto the balance after Crest placed the debt with NAR for collection, and according to the complaint, they could not have legally or contractually done so. (*Id.* ¶¶ 35-45.) Page alleges that NAR's letter is a computer-generated form that NAR had sent to hundreds of New Jersey consumers over the previous year, and that it is NAR's "policy and practice" to send letters in that form to collect consumer debts which "falsely threaten consumers that interest and other charges may be added to the balance due on their debt." (*Id.* ¶¶ 48-51.)

On February 15, 2018, Page filed a putative class action complaint on behalf of himself and all other individuals with a New Jersey address who were sent a letter from NAR between February 15, 2017 and March 7, 2018, that was "materially identical or substantially similar" to what he received. (*Id.* ¶ 63.) The complaint asserts one count for violation of the FDCPA, 15 U.S.C. § 1692e, which prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including false representations of the "character, amount, or legal status of any debt," threats to take action that "cannot legally be taken or that is not intended to be taken," and using false representations or deceptive means to "collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(2)(A), (5), and (10). (*See id.* ¶¶ 52-61.) Page alleges NAR's statement in the February 16, 2017 letter that interest or other charges may increase the balance of the debt was false, deceptive, and misleading under the "least sophisticated consumer" standard. (*Id.* ¶¶ 55-58.)

In response, NAR has moved to stay the case and compel arbitration of Page's claims on an individual basis under the Federal Arbitration Act, 9 U.S.C. §§ 3 and 4, and to strike Page's class action claims with prejudice under Fed. R. Civ. P. 12(f).  NAR argues that Page signed a lease agreement regarding his Crest account that (1) requires all claims related to that account to be submitted to binding arbitration, and (2) waives his right to bring class action claims.  (D.E. 6, Moving Br. 6.)

NAR has attached the lease agreement to its motion.  (D.E. 6-1, Lease Agreement.)  The agreement provides that "Unless prohibited by applicable law and unless you reject the Arbitration Provision in accordance with subsection (a)(ii) below, **you and we agree that either party may elect to arbitrate or require arbitration of any Claim under this Arbitration Provision.**"  (Lease Agreement § 16(a)(i) (emphasis added).)  The agreement defines, for purposes of the agreement generally, "we," "our," and "us" to mean "Crest Financial Services, LLC and its successors and assigns."  (*Id.* § 1.)  The arbitration provision also contains definitions specific to it, including a definition that expands the meaning of "we," "us," and "our" beyond only Crest and its successors and assigns to also encompass "Related Parties":

> (b) Certain Definitions. As used in this Arbitration Provision, the following terms have the following meanings:
> (i) References to "we," "us" and "our" include our "Related Parties" – all our parent companies, subsidiaries and affiliates, and our and their employees, directors, officers, shareholders, governors, managers and members.  Our "Related Parties" also include third parties that you bring a Claim against at the same time you bring a Claim against us or any other Related Party, including, without limitation, the merchant who sold us the Property we then leased to you.

(*Id.* § 16(b)(i).)  In its moving brief, NAR relied on the "Related Parties" language for its purported entitlement to enforce the arbitration provision against Page.  (Moving Br. 11, 21-22.)

In opposition, Page does not dispute that he signed the agreement or challenge its authenticity, but contends that its plain language does not allow NAR, a non-party to the

3

agreement and one that does not meet the definition of a "Related Party," to compel arbitration. Page also notes that there had been no "successor or assignee" of Crest, given that the debt "is still allegedly owed to" Crest. (D.E. 8, Opp. Br. 11 n.1.) Page further contends that the dispute between Page and NAR is outside the scope of the arbitration provision in the agreement between Page and Crest, and that the class waiver language in the agreement cannot be enforced by NAR.

Then, with its reply brief, NAR produced an assignment agreement between it and Crest, and now argues that it is entitled to enforce the arbitration provision and class waiver in the lease agreement because Crest assigned its rights to Page's account to NAR. (*See* D.E. 10, Reply Br. 4; D.E. 10-1, Murray Decl., Ex. A.) NAR also asserts that, alternatively, it is a "Related Party" based on the assignment, claiming that renders it an "affiliate" of Crest. (*Id.* at 8.) In response, Page has sought leave to file a sur-reply, and attached a proposed brief in which he objects to the newly-introduced assignment and requests that the Court either disregard it or order discovery. (D.E. 11, Sur-Reply.)

### III. Discussion

"[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. A court may compel arbitration if (1) there is an agreement to arbitrate, and (2) the dispute is within the agreement's scope. *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009).

The crux of the parties' dispute is the first requirement: that an agreement to arbitrate exists. NAR's other arguments – including whether the dispute falls within the scope of the agreement and whether Page waived his right to bring a class action – depend on a favorable ruling on the first requirement.

It is undisputed that NAR was not a party to the lease agreement containing the arbitration provision. Fundamentally, arbitration is a "'matter of contract between the parties.'" *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 771 (3d Cir. 2013) (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980)). The presumption favoring arbitration does not apply to non-signatories to the agreement; "it applies only when both parties have consented to and are bound by the arbitration clause." *Griswold v. Coventry First LLC*, 762 F.3d 264, 271 (3d Cir. 2014). Still, there are circumstances under state contract law in which a non-signatory may enforce or be bound to an arbitration agreement. *See id.*; *see also White v. Sunoco, Inc.,* 870 F.3d 257, 262 (3d Cir. 2017) ("'[T]raditional principles' of state law allow a contract to be enforced by or against nonparties through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.'" (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)).[1]

NAR initially argued that it is entitled to enforce the arbitration provision because it falls within the definition of "Related Parties" as that term appears in § 16(b)(i), but offered no evidence or factual allegations that would permit such a conclusion. Instead, NAR appears to have conflated the issue of what claims are subject to arbitration with the issue of what entity may compel arbitration. *See White*, 870 F.3d at 267 (movant's argument failed "because it confuses the nature of the claims covered by the arbitration clause with the question of who can compel arbitration").

When Page challenged NAR's argument, NAR produced a declaration from an operations department manager, Jameson Murray, that attached a purported assignment from

---

[1] The existence of an agreement to arbitrate is determined by application of ordinary state-law principles governing contract formation. *Century Indem. Co.*, 584 F.3d at 524. If a valid agreement to arbitrate is found, whether the dispute is within the agreement's scope is a matter of federal law. *Id.*

Crest to NAR. The assignment, which is undated and unsigned by NAR, states that Crest will "periodically assign" accounts to NAR for collection, and that Crest assigns its "claims and demands against all debtors assigned together with all of [Crest's] rights, title and interest therein . . . ." (Murray Decl., Ex. A at ¶ 1.) The document also provides that assignments will be made by "forwarding collection accounts to NAR," and "[e]ach time NAR receives accounts from [Crest], NAR will send [Crest] an Acknowledgment Report. Appearance of an account on the Acknowledgment Report or appearance of the account on a Statement or Status Report shall evidence that the account has been validly assigned . . . pursuant to the terms of this Agreement." (*Id.* ¶ 2.) The assignment also gives NAR "the absolute right to reject or otherwise refuse to accept the assignment of any account and/or cancel back to [Crest] any Assigned Account." (*Id.* ¶ 13.) The assignment touches on a variety of other topics, including representations and warranties, indemnification, reimbursement, commission, and dispute resolution. A number of paragraphs are redacted.

As the language recited above makes clear, the assignment agreement is not specific to Page's debt. No "acknowledgement report," statement, or status report is provided, and there is no indication that NAR actually accepted an assignment of Page's debt. Instead, the purported connection between Page's debt and the assignment is offered via Murray's declaration, which states that "Plaintiff's Crest Account is subject to the Assignment Agreement." (Murray Decl. ¶ 8.)

Although the Court may apply the Rule 12(b)(6) standard to a motion to compel arbitration when the affirmative defense of arbitrability is apparent on the face of the complaint or the documents relied on in it, that standard is inappropriate when the complaint either does not clearly establish the parties' agreement to arbitrate or the opposing party has "come forth with reliable evidence" amounting to more than a "'naked assertion . . . that it did not intend to be

bound' by the arbitration agreement." *Guidotti*, 716 F.3d at 773-74 (alteration in original; citation omitted). In that event, the motion must be evaluated under the summary judgment standard in Fed. R. Civ. P. 56, following a "restricted inquiry into factual issues" to allow evaluation of whether a meeting of the minds existed on the arbitration agreement. *Id.* at 774. The Court is thus required to allow the non-movant to conduct "limited discovery" on the "narrow issue" of the validity of the arbitration agreement when there is no clearly established agreement to arbitrate on the face of the complaint. *Id.* (citations omitted).

The Court is satisfied that the Rule 56 standard applies, and Page must be given the opportunity to conduct limited discovery into whether Crest validly assigned its rights to NAR and thereby enabled NAR to invoke the arbitration provision. Although the complaint relies on the lease agreement insofar as it is the source of the debt upon which NAR is collecting (Compl. ¶¶ 14, 16), that agreement is not the source of NAR's claim of standing to invoke arbitration. For the first time on reply, NAR has clearly articulated that the purported assignment from Crest is the basis upon which it claims authority to enforce the arbitration provision against Page.[2] (*See* Lease Agreement § 1 ("we" means Crest "and its successors **and assigns**" (emphasis added).) The assignment appears nowhere in the complaint, attached to it, or anywhere else within the universe of documents a court may consider on a motion to dismiss. *Cf. Sanford v.*

---

[2] NAR's suggestion that Page would not be prejudiced by this approach because the case is in its "very early stages" (Reply Br. 5 n.1) ignores the well-established rule that new arguments are not to be made in reply. *See, e.g.*, *Bayer AG & Bayer Corp. v. Schein Pharm.*, 129 F. Supp. 2d 705, 716 (D.N.J. 2001) (Brown, J.) (striking portions of reply), *aff'd*, 301 F.3d 1306 (Fed. Cir. 2002); *see also Fancaster, Inc. v. Comcast Corp.*, 832 F. Supp. 2d 380, 424 (D.N.J. 2011) (Debevoise, J.) (noting that the "rules of basic fairness and professionalism require that a moving party give the opposition the opportunity to fully and fairly respond to its arguments"). Instead of striking NAR's reply in whole or in part, the Court will consider both NAR's reply and Page's proposed sur-reply (D.E. 11). Accordingly, the Court grants Page's request to file that sur-reply, and deems it filed. L. Civ. R. 7.1(d)(6).

*Bracewell & Guiliani, LLP*, 618 F. App'x 114, 117-18 (3d Cir. 2015) (where plaintiff sued for breach of agreement that included arbitration clause, affirmative defense of arbitrability was "apparent from the face of the complaint and the documents relied upon therein" and Rule 12(b)(6) standard was proper). Instead, it was attached to NAR's reply, and Page has had no opportunity for discovery into the assignment or the declaration introducing it. Third Circuit precedent requires that opportunity, *see Guidotti*, 716 F.3d 764, and, following conclusion of targeted discovery on the issue of whether a valid agreement to arbitrate has been formed between Page and NAR, NAR may file a renewed motion. That motion will be evaluated under the Rule 56 standard.³ *See id.* at 776.

Resolution of the remaining issues, including whether Page's asserted claim is within the scope of the arbitration provision and whether he must pursue that claim on an individual basis, cannot be resolved absent an adequate record sufficient for the Court to conclude that a valid agreement to arbitrate exists between Page and NAR.⁴

---

³ In any such renewed motion practice, the Court expects the parties to address which state's law should govern resolution of whether a valid agreement to arbitrate was reached, and how that law would resolve the question. *See White*, 870 F.3d at 263-65.

⁴ NAR offered *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019), as supplemental authority. (D.E. 12.) In *Henry Schein*, the Supreme Court of the United States reiterated that whether a court or an arbitrator decides arbitrability is a matter of contract. But the relevance of this decision to NAR's motion is unclear, as NAR does not argue that the Court cannot or should not decide arbitrability here or even address the language in § 16(b)(ii), which states that "disputes about the validity, enforceability, coverage or scope" of the arbitration provision are "for a court and not an arbitrator to decide."

## IV. Conclusion

For the reasons set forth above, NAR's motion will be denied without prejudice. The parties are directed to proceed promptly to limited discovery under the supervision of Magistrate Judge Waldor to resolve the threshold issue of whether a valid agreement to arbitrate exists. An appropriate order will issue.

Date: March 26, 2019

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.